UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| MICHAEL L. REXROAD, | : Case No. 1:24-cv-44 |
| Petitioner, | : |
| vs. | : District Judge Douglas R. Cole |
| | : Magistrate Judge Kimberly A. Jolson |
| WARDEN, SOUTHEASTERN CORRECTIONAL INSTITUTION, | : |
| Respondent. | : |

**REPORT AND RECOMMENDATION**

Petitioner Michael L. Rexroad, a state prisoner proceeding without the assistance of counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). The matter is before the Court on the Petition (Doc. 1); Respondent's Return of Writ (Doc. 13); Petitioner's Traverse (Doc. 18); and the state court record (Docs. 12, 12-1, 12-2, 12-3, 12-4, 12-5). The Undersigned **RECOMMENDS** that the action be **DISMISSED with prejudice**.

**I.    FACTS AND PROCEDURAL HISTORY**

The Undersigned first considers the factual background and procedural history giving rise to the Petition.

**A.    Conviction and Sentence**

On June 3, 2020, a grand jury in Scioto County, Ohio, charged Petitioner with seventeen counts of rape under Ohio Revised Code § 2907.02; one count of sexual battery under Ohio Revised Code § 2907.03; and one count of gross sexual imposition under Ohio Revised Code § 2907.05. (Doc. 12 at Ex. 1, PageID 39–43). After roughly a year of negotiations, the State of

Ohio and Petitioner entered into a plea deal, which the Court accepted. (*Id.* at Ex. 7, PageID 51–52).

The next day, Petitioner, who was represented by counsel, filed a pro se motion to withdraw his guilty plea. (*Id.* at Ex. 10, PageID 56). The trial court denied the motion and sentenced him to the jointly recommended sentence from the plea agreement for a total term of imprisonment of 20 years. (*Id.* at Ex. 12, PageID 57–61 (also requiring Petitioner to fulfill five years of post-release control and to register as a Tier III Sex Offender)).

**B.     Direct Appeal**

Petitioner then appealed his conviction, raising two assignments of error:

1. The trial court erred to the prejudice of Mr. Rexroad by accepting a plea of guilty that was not made knowingly, voluntarily, and intelligently; and

2. The trial court erred to the prejudice of Mr. Rexroad by denying the motion to withdraw his plea of guilty.

(Doc. 12 at Ex. 16, PageID 79–88).

In considering his appeal, the Court of Appeals summarized the procedural history of his guilty plea:

> {¶ 5} Rexroad initially pleaded not guilty to the charges, and several hearings were held prior to Rexroad's guilty plea in July 2021. The hearings included an assessment on whether Rexroad was competent to stand trial . . . . Based on Dr. [Emily] Davis' report, the trial court found Rexroad competent to stand trial.
>
> {¶ 6} At the January 2021 pre-trial hearing, the trial court explained the seriousness of the offenses and that for the rape charges, the maximum penalty was life imprisonment. Similarly, at the March 2021 pre-trial hearing, the trial court informed Rexroad of the indicted charges, and at three intervals, explained the maximum penalty he was facing due to the tender age of the two victims. Rexroad stated he understood . . . .
>
> {¶ 8} In July 2021, Rexroad signed a guilty plea form in which he
>
>> waive[s] the reading of the indictment, and * * * [f]ully understand[s] these rights guaranteed me by the Constitution, I

2

> hereby waive them in writing. I withdraw my former plea of not guilty and enter a plea of guilty to the crime of: CT.2 Sexual Battery, * * *, being a felony of the second degree. CT.3 Gross Sexual Imposition, * * *, being a felony of the third degree. CT.9 Sexual Battery, * * *, being a felony of the second degree as amended.

Rexroad also signed a document explaining the maximum penalty for the offense of gross sexual imposition, a felony in the third degree, and a document explaining the maximum penalty for the two offenses of sexual battery, felonies in the second degree.

{¶ 9} On the same day as Rexroad signed the three documents, a plea hearing was held. At the start of the hearing, the trial court observed an error in the gross sexual imposition maximum penalty document that misstated the mandatory postrelease control period. Due to the error, the trial court instructed Rexroad's counsel to re-review the document with him, and, if he wished to proceed, to correct and initial it. The hearing proceeded with the state outlining the plea agreement . . . .

{¶ 11} Rexroad advised the trial court that that was his understanding of the plea agreement. The following exchange between the court and Rexroad then followed:

> THE COURT: All right. And sir, do you understand that by proceeding in this fashion that you'd be entering pleas of guilty to two counts of Sexual Battery, felonies of the second degree, and one count of Gross Sexual Imposition, a felony of the third degree?
> DEFENDANT: Yes.
> THE COURT: Do you understand that by entering a plea of guilty that that would then allow me to proceed with sentencing in this matter?
> DEFENDANT: Yes.
> THE COURT: All right. Do you understand by entering pleas of guilty to these charges that you'd be admitting the truth of these charges and your guilt in committing these offenses? Do you understand that?
> DEFENDANT: Yes.

Rexroad also indicated that he understood that by pleading guilty to the three counts, the state would dismiss the remaining charges. Rexroad further stated that he understood that since this is a jointly recommended sentence he waives the right to appeal his sentence.

{¶ 12} The trial court then questioned Rexroad if he had the opportunity to review the waiver and maximum penalty documents with his counsel. To which Rexroad informed the trial court that he had reviewed them, understood them, and signed

3

them. . . . . Next, the trial court notified Rexroad of the constitutional rights he waives by pleading guilty, to which Rexroad replied that he understood.

{¶ 13} The trial court again explained the maximum penalty associated with each offense . . . . Rexroad asserted that he understood the maximum prison terms associated with each offense. Mandatory postrelease control is also part of Rexroad's punishment, and, so, the trial court advised him that it was mandatory for five years. Rexroad stated that he understood that postrelease control was part of his sentence and that he had to register as a sexual offender.

{¶ 14} After these notifications were relayed to Rexroad, the trial court inquired if Rexroad wished to proceed. Rexroad affirmed that he still wished to proceed with the plea and asserted that he wished to keep his signature on the documents. The state placed on the record that it was amending the indictment as to Count Nine, and Rexroad's counsel stated he has no objection. The trial court began reading the offenses but realized there was a clerical error in the numbering of the statutory provision for sexual battery as amended in Count Nine. The trial court requested that the document be corrected, re-reviewed by Rexroad and his counsel, and Rexroad initial the correction. Following the correction, the trial court recited the offenses to Rexroad:

> Let's do this again. Sir, as to Count 2 Sexual Battery, in violation of Revised Code Section 2907.03(A)(5) and (B), said offense a felony of the third degree, Count 3 Gross Sexual Imposition, in violation of Revised Code Section 2907.05(A)(4) and (C)(2), said offense a felony of the third degree, Count 9 as amended, being charge of Sexual Battery, in violation of Revised Code Section 2907.03(A)(5) and (B), said offense a felony of the second degree[.]

Rexroad then pleaded guilty to the three offenses pursuant to the plea agreement.

{¶ 15} One day after pleading guilty, Rexroad filed a one-paragraph, unsigned handwritten document asking to withdraw his plea. On July 26, 2021, a combined motion to withdraw plea and sentencing hearing was held. At the start of the hearing, the trial court recounted the procedural history of the case. The trial court then stated that it received a handwritten letter in which Rexroad is requesting to withdraw his plea. Both the state and Rexroad's counsel indicated they did not receive a copy of the letter. Rexroad's counsel, however, was aware of the letter after he reviewed the online docket and after speaking with Rexroad. According to counsel, Rexroad has several reasons to withdraw his plea and one of the reasons is a claim of tampering with evidence by the state in discovery. Rexroad's counsel then advised the trial court that "I have no good faith basis for that argument and will not make it before the Court." The reasons to withdraw the plea were handwritten by Rexroad and he was asked to read them into the record since his counsel had a hard time reading his writing:

4

> I, Michael Rexroad, on July 25th, 2021, request to withdraw my plea of guilty and instead go to trial for some of the following reasons; one, I survived a year and a half in jail without signing a time waiver and believe I have earned the right to have - -earned to have that right returned to me. I feel that scare tactics were used to influence my decision. As a 50 percent disabled veteran that fought the state and the last year and a half after my injury, I requested I still be allowed to continue to fight for my innocence. I apologize for pulling the VA card, but I'm at my wits end. It has been brought to my attention- -I prefer not to read the fifth one, Your Honor. If you could take a look at it.
>     * * *
> It has been brought to my attention that I do not have to convince 12 people of my innocence, only one - -or one that she is faking, or one that she is lying, which would be easier if I had my motion of discovery.

{¶ 16} After Rexroad presented the reasons for his request to withdraw his plea, the trial court inquired of his counsel if he wished to present any evidence in support of the motion. Counsel reiterated:

> Your Honor, in good faith I cannot - -if - - argue on speedy trial issues. Everything has been - - there's been motions to continue. I see no speedy trial issues. I will not put a - -forward a good faith basis for that. Scare tactics, Your Honor, everything has been explained to him in the court, consequences, I cannot - -there was no scare tactics used. He's weighingly (sic) and knowingly made the choice he made. He - -we have went over and discussed the motion of discovery and so - -
> * * * So, I cannot put forward any good faith argument for a motion to withdraw guilty plea.

The trial court then questioned counsel whether Rexroad wished to testify in support of his motion, and counsel left the decision to Rexroad, who indicated that he did. This is when the trial court advised Rexroad that if he testifies, the state will be permitted to question him regarding these issues. Rexroad indicated that he understood and was sworn in. . . .

{¶ 19} . . . [F]ollowing Rexroad's testimony and cross examination, the] trial court noted that "I am going to find that this was a request filed by the Defendant individually and not through counsel. This Court did choose to proceed with a hearing on this matter despite that fact." The trial court then denied the motion finding there is no reasonable and legitimate basis to withdraw the plea.

{¶ 20} In support of denying the motion, the trial court found that Rexroad was afforded a full Crim.R. 11 hearing, understood the nature of the charges he was

5

pleading guilty to, and understood the possible penalties including the jointly recommended sentence. The trial court also held that Rexroad failed to present evidence supporting his innocence, and, that to contrary, the state presented his admission of committing the offenses. Further, the trial court determined that Rexroad filed his motion based on a change of heart and did not find credible his assertion that the interrogation recording was tampered with.

{¶ 21} After denying the pro se motion to withdraw the plea, the trial court proceeded to sentencing. . . .

(Doc. 12 at Ex. 18, PageID 106–15). The state appellate court overruled the assigned errors and affirmed the trial court's judgment. (*Id.* at Ex. 18, PageID 105–24).

Petitioner appealed the decision to the Ohio Supreme Court, raising the same propositions of law. (Doc. 12 at Ex. 20, PageID 131–40). The court declined to accept jurisdiction. (*Id.* at Ex. 22, PageID 163).

### C. State Post Conviction

Petitioner, still without the assistance of counsel, then filed a post-conviction petition with the state trial court. (Doc. 12 at Ex. 23, PageID 164–73). He offered two grounds for relief:

1. Ineffective assistance of counsel, both trial and appellate counsel; and

2. Trial court committed [reversible] error when it over-ruled Defense Motion 29 Motion to Dismiss due to insufficient evidence.

(*Id.* at PageID 166–70). On June 23, 2023, the state trial court (1) determined that Petitioner's ineffective assistance of counsel claim was barred by res judicata; (2) found that he failed to show any substantive grounds for relief; and (3) dismissed the petition as untimely. (*Id.* at Ex. 26, PageID 182–84). About two months later, Petitioner filed a Motion for Post-Conviction DNA Testing (*id.* at Ex. 27, PageID 185–86), and a Motion for Production of Documents (*id.* at Ex. 28, PageID 188–89). The state trial court denied both. (*Id.* at Ex. 29, PageID 190–91; Ex. 30, PageID 192–93). It does not appear that Petitioner appealed any of the state trial court's post-conviction decisions. (*See id.* at Exs. 31–33, PageID 194–209 (state court dockets)).

6

D. **Federal Habeas Corpus**

Petitioner, again without a lawyer, filed the instant Petition for a writ of habeas corpus. (Doc. 1). Petitioner provides two grounds for relief:

> **GROUND ONE:** The trial court erred to the prejudice of Mr. Rexroad by accepting a plea of guilty that was not made knowingly, voluntarily, intelligently.
>
> **Supporting Facts:** The trial court did not ensure that Mr. Rexroad understood the nature of the charges against him. Statement of facts was not read into the record. Trial court did not review the elements of the offense with Mr. Rexroad. The record reflects Mr. Rexroad was unsure if he really wanted to enter a plea of guilty. Later at the sentencing hearing Mr. Rexroad appears further confused regarding the proceedings. He believed he was already sentenced. The day after pleading guilty Mr. Rexroad filed a pro se motion to withdraw his plea.
>
> **GROUND TWO:** The trial court erred to the prejudice of Mr. Rexroad by denying the motion to withdraw his guilty plea.
>
> **Supporting Facts:** The day after his guilty plea, Mr. Rexroad filed a pro se motion to withdraw his plea. The trial court held a hearing on his pro se motion. Mr. Rexroad expressed dissatisfaction with his attorney. No other attorney was appointed. Mr. Rexroad put forth specific reasons why he wanted to withdraw his plea. He told the court he was innocent, confused about how a jury trial worked. He was prepared to go to trial but felt backed into a corner. He claimed the incriminatory statements made during his interrogation were because he was homeless and the investigation promised him a place to stay.

(*Id.* at PageID 5–7). Respondent filed a Return of Writ (Doc. 13); the state court record (Doc. 12, Exs. 1–33); and trial transcripts (Docs. 12-1, 12-2, 12-3, 12-4, 12-5); and Petitioner filed a Traverse. (Doc. 18).

**II. STANDARD OF REVIEW**

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a writ of habeas corpus may not issue on any claim adjudicated on the merits by the state courts unless the adjudication either:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

7

> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599–600 (quoting *Williams*, 529 U.S. at 413).

The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted). A federal habeas court's review is limited to "the record before the state court." *Id.* at 182.

### III. DISCUSSION

As noted, Petitioner raises two grounds for relief. (Petition, Doc. 1, PageID 5–7). Petitioner first asserts that the state trial court erred in accepting his guilty plea when it was not made knowingly, voluntarily, or intelligently. (*Id.* at PageID 5). He also contends that the state trial court erred in denying his pro se motion to withdraw the guilty plea. (*Id.* at PageID 7). The Undersigned addresses each.

#### A. Ground One: Trial Court Error, Accepting Plea Agreement

In Ground One, Petitioner argues that the state trial court erred in accepting a guilty plea that was not made knowingly, voluntarily, or intelligently. (*Id.* at PageID 5). Specifically, he says

8

the state trial court did not (1) "ensure" that he understood the nature of the charges against him or (2) review the elements of the charged offenses. (*Id.*). Rather, says Petitioner, the record shows he was unsure about entering the guilty plea and confused about the proceedings. (*Id.*). Upon review, the Undersigned finds no error.

Because a criminal defendant waives numerous constitutional rights when he enters a guilty plea, any plea must be entered into knowingly and voluntarily to be constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969); *Brady v. United States*, 397 U.S. 742, 748–49 (1970). The "longstanding test" is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Railey v. Webb*, 540 F.3d 393, 417 (6th Cir. 2008) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)). In applying this standard, the reviewing court must consider the totality of circumstances surrounding the plea. *Garcia v. Johnson*, 991 F.2d 324, 327 (6th Cir. 1993) (citations omitted); *Brady*, 397 U.S. at 749 (citations omitted). A plea is voluntary if the defendant "understands the nature of the charges against him and the constitutional protections that he is waiving." *Evans v. Jackson*, No. 20-11379, 2022 WL 989321, at *3 (E.D. Mich. Mar. 30, 2022) (citing *Henderson v. Morgan*, 426 U.S. 637, 644–45 n.13 (1976)). A plea is knowing and intelligent if the defendant has "sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748. Still, the mere fact that the defendant "did not correctly assess every relevant factor entering into his decision" does not mean that the decision was not intelligent. *Brady*, 397 U.S. at 755, 757 (citations omitted); *see also Reddic v. Conerly*, No. 05-cv-73713, 2006 U.S. Dist. LEXIS 113947, at *9–10 (E.D. Mich. Dec. 5, 2006) ("It is the rare criminal defendant who does not suffer some anguish, agitation, and stress as a result of being charged with a crime and anticipating an impending trial."), *aff'd*, 294 F. App'x 190 (6th Cir. 2008).

9

The "decision whether or not to plead guilty ultimately rests with the [defendant]." *Lyons v. Jackson*, 299 F.3d 588, 598 (6th Cir. 2002) (citations omitted). Ultimately, a criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Likewise, the Sixth Circuit has found that a petitioner is bound by his in-court statements regarding his understanding of the plea. *Ramos v. Rogers*, 170 F.3d 560, 563 (6th Cir. 1999) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). And when a state court determines a plea was entered validly, the state court is generally afforded a presumption of correctness. *Railey*, 540 F.3d at 417 (quoting *Garcia*, 991 F.2d at 326).

Here, Petitioner raised this claim on direct appeal. (Doc. 12 at Ex. 18, PageID 117–18). The state appellate court overruled his assignment of error, finding:

> {¶ 29} The totality of the circumstances here demonstrate that Rexroad was notified of the nature of the charges and he understood them. Rexroad's indictment as to Counts Two and Three specified the name of the offenses, listed the applicable statutory provisions, the level of the felony, identified the victim, and that the victim was under the age of 13 years. As for the amended Count Nine, which tracked the same language as Count Two, Rexroad waived the reading of the indictment. Rexroad was provided with a bill of particulars in which it stated that Rexroad committed the offense of sexual battery, in violation of R.C. 2907.03(A)(5), R.C. 2907.03(B)(3), a second degree felony, in Count Two based on his act of engaging in sexual conduct with the minor M.D., with a date of birth of 12/24/2007, who was less than 13 years of age. Similarly, the state as to Count Three, informed Rexroad that he is charged with committing gross sexual imposition, in violation of R.C. 2907.05(A)(4), R.C. 2907.05(C)(2), a third-degree felony, for his conduct of having sexual contact with M.D., who was less than 13 years old.
>
> {¶ 30} Additionally, before signing the guilty plea form and the maximum penalty documents, Rexroad through several hearings was advised that the crimes are about his sexual assault of the two minors C.D. and M.D. The state's evidence of the criminal conduct included Rexroad's handwritten admission.
>
> {¶ 31} And then there are the guilty plea and maximum penalty documents. Rexroad reviewed the documents with counsel, was questioned about them at the plea hearing by the trial court, and, more than once, indicated he signed them and wished to keep his signature on them. The documents identified each offense Rexroad was pleading guilty to, including the name, the statutory provisions, and the maximum penalty involved. Additionally, at the plea hearing, the trial court had

10

several exchanges with Rexroad advising him repeatedly of the offenses he was pleading guilty to. Rexroad informed the trial court that he understood and wished to proceed with the plea. *See State v. Vialva*, 8th Dist. Cuyahoga No. 104199, 2017-Ohio-1279, ¶ 8 (The trial court substantially complied with Crim.R. 11(C)(2)(a) in advising Vialva of the nature of the charges where the trial court at the plea hearing stated the offense, the statutory code section and the degree of the offense.)

{¶ 32} Rexroad now construes his one response "I'm going to have to say, yes" when questioned by the trial court if he wished to proceed as demonstrating hesitation. We disagree. First, this response was in regard to the trial court advising Rexroad that a jointly recommended sentence means he waives the right to appeal the sentence . . . .

Second, Rexroad provided similar responses that he does not challenge as a demonstration of hesitation. Rexroad does not challenge his understanding that by pleading guilty he waived the right to have the state prove his case beyond a reasonable doubt and his right against self-incrimination. When questioned if he understood he was waiving these rights, Rexroad responded: "I believe so, yes." Further, when asked if he had any questions, Rexroad answered "I don't think so."

{¶ 33} We, therefore, conclude that the trial court substantially complied with Crim.R. 11(C)(2)(a) in advising Rexroad of the nature of the charges. Rexroad understood the nature of the charges when he pleaded guilty to the two count of sexual battery and one count of gross sexual imposition.

{¶ 34} Accordingly, we overrule Rexroad's first assignment of error.

(Doc. 12 at Ex. 18, PageID 118–20).

The state appellate court's conclusion was not unreasonable. As that court noted, before accepting his plea, the trial court reviewed the nature of the charges; informed Petitioner of the rights he was giving up by pleading guilty; and advised him of the terms of the plea agreement, including the maximum penalties for the charges. (Doc. 12-4, PageID 295–305 (Transcript of Change of Plea); Doc. 12 at Ex. 18, PageID 107–12, 118–20; *see also* Doc. 12 at Ex. 7, PageID 51–52 (signed plea agreement); Ex. 8, Page ID 53–54 (signed maximum penalty documents)). Petitioner then represented that he understood the terms of the plea agreement and wished to proceed with a guilty plea. (Doc. 12-4, at PageID 296–97). Petitioner is bound by his in-court statements, *Ramos*, 170 F.3d at 563, even if he later had a change of heart. *Reddic*, 2006 U.S. Dist.

11

LEXIS 113947, at *9–10. And, in the end, Petitioner's agreement to plead guilty, expressed in-court and within a signed document, carries a presumption of truthfulness. *Blackledge*, 431 U.S. at 74.

What's more, the state trial court found that Petitioner understood the nature of the charges against him and the consequences of the plea—a finding afforded a presumption of correctness. *Railey*, 540 F.3d at 417 (quoting *Garcia*, 991 F.2d at 326). This Court must defer to the state appellate court's conclusion that the "totality of the circumstances here demonstrate that Rexroad was notified of the nature of the charges and he understood them." (Doc. 12 at Ex. 18, PageID 118–20); *Renico v. Lett*, 559 U.S. 766, 773 (2010); *Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018).

While Petitioner now contends that he was confused about the proceedings, "the mere fact that [he] 'did not correctly assess every relevant factor entering into his decision' does not mean that the decision was not intelligent." *Brady*, 397 U.S. at 755, 757 (citations omitted). Petitioner was aware he faced a potential life sentence if he proceeded to trial and was convicted on the rape charges. (Doc. 12 at Ex. 18, PageID 107); *see Railey*, 540 F.3d at 417 (quoting *Hill*, 474 U.S. at 56) (noting the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alterative courses of action open to the defendant"). And though Petitioner further asserts that the state trial court failed to review the elements of the crimes charged, the Court may presume that his trial counsel informed him of the nature of the charges and required elements. *Williams v. Wolfenbarger*, 513 F. App'x 466, 470 (6th Cir. 2013) (citing *Henderson*, 426 U.S. at 647); *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (citations omitted).

Based on the totality of circumstances and the deference afforded to the state courts, the record shows that Petitioner entered into the plea knowingly, intelligently, and voluntarily. The

state appellate court's denial of this claim on direct appeal is not contrary to or an unreasonable application of Supreme Court precedent. *Garcia*, 991 F.2d at 327; *Brady*, 397 U.S. at 748–49. The Undersigned **RECOMMENDS** Ground One be **DENIED** as meritless.

**B.      Ground Two: Trial Court Error, Denying Motion to Withdraw Plea**

Relatedly, in Ground Two Petitioner asserts that the state trial court erred in denying his pro se motion to withdraw his guilty plea. (Petition, Doc. 1, PageID 7). As support, Petitioner notes that during the hearing on the motion, he "expressed dissatisfaction with his attorney" but "no other attorney was appointed." (*Id.*). Petitioner contends he provided the trial court several reasons why he wanted to withdraw his plea, including that he "was innocent [and] confused about how a jury trial worked" and was "prepared to go to trial but felt backed into a corner." (*Id.*).

When Petitioner asserted this claim on direct appeal, the state appellate court overruled it, stating:

> {¶ 38} In the case at bar, Rexroad was represented by counsel. Yet, one day after pleading guilty, Rexroad filed a pro se, one-paragraph motion to withdraw his guilty plea. At the motion to withdraw hearing, Rexroad read into the record several reasons he believed warranted granting his request to withdraw his plea. Rexroad's attorney did not join the motion and on multiple occasions informed the trial court that he could not in good faith argue in support of the motion. Rexroad testified in support of his motion, but was minimally questioned by his counsel. Rexroad's counsel declined to present a closing argument in support of the motion to withdraw. Based on counsel's failure to join the motion, the trial court held that "this was a request filed by the Defendant individually and not through counsel. This Court did choose to proceed with a hearing on this matter despite that fact."
>
> {¶ 39} The trial court improperly considered Rexroad's pro se motion to withdraw his plea as he was represented by counsel who did not join the motion. [Footnote 2: Rexroad did not request new counsel or to represent himself in the case.] Therefore, we cannot say that the trial court erred in denying his motion. *See State v. Lamb*, 4th Dist. Scioto No. 17CA3796, 2018-Ohio-1405, ¶ 57 (Hybrid representation is prohibited and because appellant's counsel did not join or adopt the pro se motions, "the trial court was not permitted to entertain the motions.") *See also State v. Williams*, 8th Dist. Cuyahoga No. 109972, 2021-Ohio-2032, ¶ 15 (A trial court entertaining a defendant's pro se motion to withdraw his plea when the

> defendant is represented by counsel who declines to join the motion constitutes "hybrid representation in violation of the established law.")
>
> {¶ 40} Accordingly, we overrule Rexroad's second assignment of error.

(Doc. 12 at Ex. 18, PageID 122–23).

Here, Respondent contends that Ground Two is procedurally defaulted or, alternatively, is not cognizable in federal habeas corpus. (Return, Doc. 13, PageID 378–81).

### 1. Procedural Default

Respondent first asserts that Ground Two is procedurally defaulted. As support, Respondent states that the state appellate court applied the hybrid representation procedural rule in denying Petitioner's claim on direct appeal. (Return, Doc. 13, PageID 379–81). The Undersigned disagrees with Respondent's assessment.

A state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If a federal habeas petitioner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). A "corollary to the exhaustion requirement" is the doctrine of procedural default. *Whitman v. Gray*, 103 F.4th 1235, 1238 (6th Cir. 2024) (quoting *Davila v. Davis*, 582 U.S. 521, 527 (2017)) (citation modified). That is, where a petitioner has failed to exhaust claims but the "court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (citing *Harris v. Reed*, 489 U.S. 255, 269–70 (1989)). Generally, a federal court will refuse to consider a claim on habeas review if the claim is procedurally defaulted. *Wainwright v. Sykes*, 433 U.S. 72, 86–87 (1977); *Dretke v. Haley*, 541

14

U.S. 386, 388 (2004) (reaffirming procedural default rule and stating federal courts will not ordinarily "entertain a procedurally defaulted constitutional claim" in habeas petitions).

When considering whether procedural default bars a habeas petitioner's claim, the reviewing court "must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Jones v. Bradshaw*, 46 F.4th 459, 484 (6th Cir. 2022) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). Further, the last-reasoned state court decision on the claim must "clearly and expressly" rely on that procedural rule in rendering a judgment. *Fenstermaker v. Warden, Se. Corr. Inst.*, No. 2:24-cv-162, 2025 WL 676259, at *6 (S.D. Ohio Mar. 3, 2025) (quoting *Harris*, 489 U.S. at 263). If, on the other hand, the last-reasoned state court decision is ambiguous or equivocal as to whether it relied on the procedural rule, then a federal court may still review the claim. *See Smith v. Cook*, 956 F.3d 377, 385 (6th Cir. 2020) (quoting *Clinkscale v. Carter*, 375 F.3d 430, 441-42 (6th Cir. 2004) (quoting *Harris*, 489 U.S. at 263)).

Here, Petitioner filed a pro se motion to withdraw his guilty plea in the state trial court. (Doc. 12 at Ex. 10, PageID 56). During the hearing on the motion, Petitioner's trial counsel did not join the pro se motion because his counsel had "no good faith basis" to support the request. (Doc. 12-5, PageID 315–16; Doc. 12 at Ex. 18, PageID 112–14, 122–23). The state appellate court found that the state trial court erred in holding a hearing on Petitioner's motion to withdraw his plea when Petitioner's trial counsel failed to join the motion. (Doc. 12 at Ex. 18, PageID 122–23).

In coming to this conclusion, the state appellate court cited the hybrid representation rule. (Doc. 12 at Ex. 18, PageID 122–23). Under Ohio law, a criminal defendant is permitted to be "represent[ed] by counsel or to proceed pro se with the assistance of standby counsel." *Ysreal v. Warden, Chillicothe Corr. Inst.*, No. 1:13-cv-034, 2014 U.S. Dist. LEXIS 173629, at *21 (S.D.

Ohio Aug. 12, 2014) (citations omitted). The "two rights are independent of each other and may not be asserted simultaneously." *Id.* This "hybrid representation rule" "operates to prevent a defendant from filing pro se motions while represented by counsel." *Id.* Courts in the Sixth Circuit have held that the hybrid representation rule is routinely followed and an adequate and independent state ground to preclude habeas relief. *Id.* at *21–22 (collecting cases).

Yet, though the state appellate court cited the hybrid representation in its decision, it did not expressly dismiss Petitioner's claim based on his failure to follow the rule. *See Fenstermaker*, 2025 WL 676259, at *6. Rather, it determined that the state trial court erred in even considering Petitioner's pro se motion to withdraw because Petitioner's counsel did not join the motion. (Doc. 12 at Ex. 18, PageID 122–23). One could reasonably interpret this decision as finding that the state trial court—not Petitioner—failed to follow a state procedural rule. Further, the state appellate court does not appear to fault Petitioner for his failure to follow the rule. (*Id.* at PageID 122–23). While the state appellate court noted that Petitioner did not ask for new counsel or request to represent himself, the court did not convey that it was an obligation. (*Id.* at PageID 123). And it is unclear whether the state appellate court relied on the procedural rule at all in concluding that "we cannot say that the trial court erred in denying [Petitioner's] motion." (*Id.*). Ultimately, this is not an express, unequivocal statement that Petitioner's claim was barred on procedural grounds.

As such, the state appellate court did not "clearly and expressly" dismiss Petitioner's claim for his failure to comply with the hybrid representation rule, as would be required under the doctrine of procedural default. *Fenstermaker*, 2025 WL 676259, at *6 (quoting *Harris*, 489 U.S. at 263). On this record, the Undersigned cannot conclude this claim is procedurally defaulted. *Id.*; *Smith*, 956 F.3d at 385.

16

    *2.*  *Not Cognizable*

  Respondent alternatively asserts that denial of Petitioner's motion to withdraw his guilty plea is not cognizable in federal habeas corpus. (Return, Doc. 13, PageID 378–79). This time, the Undersigned agrees.

  State court decisions based on state law issues are not subject to federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007); *see also Davis v. Bradshaw*, 900 F.3d 315, 325 (6th Cir. 2018) ("Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state." (citation omitted)). Time and again, courts have held that the denial of a motion to withdraw a plea is a question of state law insufficient to warrant habeas relief. *See, e.g.*, *Bingham v. Haviland*, No. 3:20-cv-1846, 2023 WL 6383684, at *6 (N.D. Ohio Sept. 29, 2023) (citation omitted); *Goodwin v. Buchanan*, No. 5:19-cv-888, 2022 WL 1152782, at *1 (N.D. Ohio Apr. 19, 2022)). "While there is no federal due process right to withdraw pleas, some state court rulings may rise to the level of due process violations, justifying habeas relief," which "hinges on whether the plea was knowing and voluntary." *Bingham*, 2023 WL 6383684, at *6 (citations omitted). But when the record reflects that a guilty plea was entered into knowingly, intelligently, and voluntarily, courts have "consistently rejected the argument that a state trial court's handling of a motion to withdraw a guilty plea implicates federal constitutional rights." *Dunlap v. Warden*, No. 2:21-cv-5849, 2022 WL 16950956, at *8 (S.D. Ohio Nov. 15, 2022) (collecting cases).

  As explained above, Petitioner failed to show that his plea was constitutionally infirm. The state appellate court concluded that the totality of the circumstances shows Petitioner understood the nature of the charges against him and the consequences of accepting the plea agreement. (Doc. 12 at Ex. 18, PageID 118–20). The Court must defer to this conclusion and finds that the state

17

appellate court was not unreasonable in denying this claim on direct appeal. *Renico v. Lett*, 559 U.S. 766, 773 (2010); *Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018).

Even considering Petitioner's argument that his innocence claims rendered his guilty plea involuntary, he has failed to offer any support or refute his own handwritten confession. Notably, the state trial court did not find any support for Petitioner's allegation that police used scare tactics to coerce a confession. (Doc. 12-5, PageID 345). Again, this Court must defer to the state trial court's findings that "there's been no evidence offered that he's not guilty of these charges" and that "there is no indication—no evidence offered that he's actually not guilty of these charges." (*Id.* at PageID 346); *see Railey v. Webb*, 540 F.3d 393, 417 (6th Cir. 2008) (quoting *Garcia*, 991 F.2d at 326) (finding that state trial courts are afforded a presumption of correctness in finding a plea was voluntary).

Nevertheless, Petitioner maintains that the state trial court abused its discretion in failing to find he was innocent. But an abuse of discretion is not necessarily a due process violation. *Sinistaj v. Burt*, 66 F.3d 804, 808 (6th Cir. 1995). And to the extent that Petitioner attempts to raise a freestanding actual innocence claim (*see* Petition, Doc. 1, PageID 7; Traverse, Doc. 8, PageID 411), the Sixth Circuit has "repeatedly indicated that such claims are not cognizable on habeas." *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020) (citation omitted); *Smith v. Skipper*, No. 18-1743, 2018 WL 8685469, at *4 (6th Cir. Oct. 19, 2018) (citing *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993); *Hodgson v. Warren*, 622 F.3d 591, 601 (6th Cir. 2010); *Cress*, 484 F.3d at 854–55) (pointing out that the petitioner raised an actual innocence claim framed as constitutional violations, but the petitioner offered no more than factual arguments that he was actually innocent).

As such, the state trial court's denial of Petitioner's motion to withdraw his plea fails to rise to the level of a due process violation and does not justify federal relief. For these reasons, the Undersigned **RECOMMENDS** Petitioner's second ground for relief be **DENIED** as not cognizable.

IV. RECOMMENDED DISPOSITION

The Undersigned **RECOMMENDS** that this action be **DISMISSED with prejudice**.

**IT IS SO RECOMMENDED**.


Date: July 1, 2025         /s/ Kimberly A. Jolson
                           KIMBERLY A. JOLSON
                           UNITED STATES MAGISTRATE JUDGE


**PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo and operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.